**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

**WILLIAM DEVILLE**,

                **Plaintiff,**

**vs.**                                        **CIVIL ACTION NO.**

**CAPITAL AREA TRANSIT SYSTEM,**      **Jury Demanded**

                **Defendant.**

## ORIGINAL COMPLAINT

### NATURE OF THE ACTION

William Deville (hereinafter "Deville") brings this civil action for monetary, declaratory, and other legal and equitable relief against Capital Area Transit System (CATS), ("Defendant") to redress violations of Deville's rights under the laws of the United States and the laws of the State of Louisiana. Deville has been denied his right to be free from illegal retaliation for opposing Defendants' violations of the Americans with Disabilities Act, and violations of federal drug testing regulations. Furthermore, Defendant violated Deville's right to be free from age discrimination, disability discrimination, and breached its employment contract with Deville. During all times mentioned herein, the Defendant Capital Area Transit System, its Board of Commissioners (Board) and/or its agents and employees jointly, or, as a single unit, or individually engaged in the illegal conduct which deprived Deville of rights secured to him by the laws of the United States and the State of Louisiana.  Deville suffered injuries and damages because of the deprivation of his rights.

### JURISDICITION AND VENUE

1.     This action arises under the laws of the United States, specifically the Americans with

Disabilities Act of 1990 (ADA/ADAAA), 42 U.S.C. §§12112 and 12203, *et al*; the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §623 *et al*; 42 U.S.C. §1981a *et seq*.; and 42 U.S.C. §1988.

2. This action also arises under the laws of the State of Louisiana, specifically, LA Rev Stat.§23:312; and LA R.S. 23.322-323.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because it involves federal law. This Court has supplemental jurisdiction over all other related claims pursuant to 28 U.S.C. §1367(a)

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1)(2) because Defendants are headquartered in the Middle District of Louisiana, and a substantial part of the events or omissions giving rise to Deville's claims occurred in this District.

5. This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §2201.

## PARTIES

6. William Deville is a Black male, over the age of 40, and a resident of the United States and the State of Louisiana.

7. Defendant Capital Area Transit System (CATS) is a political subdivision of the State of Louisiana and a governmental entity headquartered in Baton Rouge, Louisiana.

8. Defendant, at all times relevant hereto, was Deville's employer.

9. The Board of Commissioners was at all times relevant hereto the body that Deville reported to while he was employed by CATS. Kahli Cohran served as the President of the Board of Commissioners for CATS.

## ADMINSTRATIVE PROCEDURES

10.     On or about October 21, 2022, Deville timely filed a charge of employment discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"). On August 17, 2023, the EEOC issued Deville a "Determination and Notice of Right to Sue," and this action is brought within ninety (90) days of his receipt of the same (Exhibit A incorporated herein by reference here). Deville alleges herein that he was denied equal employment opportunities because of illegal retaliation because of his opposition to violations of law, disability, and age.

## STATEMENT OF FACTS

### Deville's Employment Agreement

11.     Deville has over 40 years of management experience in the transit industry.

12.     Deville began his career with CATS as the Revenue Officer in a contractual arrangement. Deville held the position of Revenue Officer from December 2015 to April 2016.

13.     Deville served as interim Chief Executive Officer (CEO) for CATS from April 2016 through September 2016.

14.     Following his appointment as the interim CEO, Deville was hired as the permanent CEO effective September 20, 2016, pursuant to the contract executed by Deville and Defendant on October 24, 2016 (the "Contract").

15.     Deville's employment contract provided for a three-year term from September 20, 2016, extending through September 19, 2019, which was defined therein as "the regular term".

16.    The Contract provided for two additional two-year extensions which were automatically renewed unless either party gave notice of termination on or before June 19 of the final year of the current term.

17.    CATS extended Deville's contract for the period of September 20, 2019, to September 19, 2021.

18.    The second two-year extension became effective on September 20, 2021, and would have ended on September 19, 2023.

19.    Upon expiration of the second extension, the agreement was to continue on a month-to-month basis, subject to a 30-day notice by either party of its intent to terminate the agreement.

20.    The Contract provided that neither party would terminate the contract except for cause.

**Deville's Employment**

21.    As the CEO, Deville was vested with the authority for providing management services to CATS.

22.    Deville was responsible for administering and managing the affairs of CATS consistent with the CATS Board of Commissioners (CATS Board) policies and applicable regulatory authorities.

23.    Deville had authority over all management and administrative functions, planning, budgetary, financial, personnel, capital improvements, and operating policies and practices, as well as any other authority required to carry out the day-to-today operations of CATS.

4

24. Deville was obligated to exercise a high degree of independent judgement and initiative within the general policy guidelines established by the CATS Board.

25. This included the right to conduct purchases and to negotiate and execute contracts within CATS Board established guidelines.

26. As CEO, Deville spearheaded a significant overhaul of services, operational efficiencies, and overall performance at CATS.

27. Deville's immediate successes and notable achievements resulted in enhancements of service quality, but also garnered widespread public support for a 10-year property tax renewal that had previously been considered unattainable.

28. Under Deville's leadership, significant investments were made in pioneering initiatives, including the establishment of the first-ever bus rapid transit, a modernization of the bus fleet with a shift towards electric buses, and the successful implementation of East Baton Rouge Parish's inaugural micro transit system.

29. The CATS's Board was required to evaluate Deville's performance annually.

30. Deville was informed by CATS's Counsel of the process and procedures that the CATS Board would follow in evaluating Deville's performance.

31.  CAT's Counsel informed Deville that the Board would meet with Deville a year in advance to determine criteria to be used in evaluating his performance.

32. CATS's Counsel informed Deville of the evaluation terms and language to be used in Board meeting announcements, and of the formal notice that he had the right to have the evaluation meeting in public or in private.

33.    None of the foregoing was done after Deville's first two annual evaluations, even after Deville brought it to the attention of Board President.

**ADA Protected Employee – The Comptroller**

34.    In 2020, the first year of the COVID-19 pandemic, the local union representing CATS' bus operators demanded that CATS pay hazard duty pay to the operators.

35.    On the advice of legal counsel, CATS refused to authorize hazard pay, and the union began a public campaign to discredit CATS and its leadership.

36.    The union found a sympathetic ear in the media who publicized whatever was alleged by ATU while reporting adversely to CATS responses.

37.    In early 2022, in violation of federal regulations, 49 C.F.R. 655 and Louisiana State Law, La. R.S. 49.1001, the CATS Interim HR Director required the CATS Comptroller to submit to a random drug test.

38.    The Comptroller was not a safety sensitive employee and should not have been subjected to the drug test.

39.    The drug test revealed the presence of a controlled substance.

40.    The Comptroller's attending physician explained to CATS that the positive result was attributed to a prescribed medication for a persistent medical condition.

41.    The sensitive information from the Comptroller's drug test was leaked to the media.

42.    Seizing on this opportunity, the Union publicly denounced the Comptroller's retention as a display of preferential treatment, citing past terminations of union employees for similar failed drug tests.

43.    The CATS Board President, Kahli Cohran launched an aggressive campaign demanding that Deville terminate the Comptroller openly raising the issue in public meetings and media interviews.

44.    Defendant inspired negative news reports based on false and/or incorrect information led to the tarnishing of Deville's reputation in the local community specifically, and in the tight knit transit community nationally.

45.    Cohran's unyielding stance persisted despite having been informed of the confidential and protected status of the Comptroller's health information as dictated by HIPPA.

46.    Cohran's demands to terminate the Comptroller continued even after Deville explained that the Comptroller cleared up the source of the controlled substance.

47.    Deville informed Cohran that the Comptroller's health issue qualified him for protection under the Americans with Disability Act (ADA).

48.    Deville informed CATs that and under the circumstances CATS would be subject to a violation of the ADA if he terminated the Comptroller.

49.    The CATS Board President then threatened Deville with termination of Deville's employment even after being informed it would violate the ADA for Deville to terminate the Comptroller.

50.    Deville opposed terminating the Comptroller knowing to do such would violate the ADA.

51.    Cohran in retaliation for Deville's opposition to undertaking unlawful action against an employee which would have amounted to illegal discrimination under the ADA, began a campaign to fire Deville.

52.    After legal counsel advised the CATS Board of the impacts of violating the ADA and a pending wrongful termination claim, the CATS Board dropped the issue of firing the Comptroller.

53.    Cohran, the Board President began to take other measures to retaliate against Deville.

54.    The Comptroller subsequently filed suit which resulted in a settlement that included CATS's payment of monetary damages, and a statement that the Comptroller was innocent as highlighted in the article, "*Baton Rouge bus system says fired administrator wasn't a drug user, settles lawsuit".*[1]

55.    Defendant Cohran embarked on a relentless campaign of retaliation, harassment, and discrimination against Deville.

56.    Cohran employed various mediums including in-person confrontations, repeated telephone calls, a barrage of messages, and ignoring Deville's health status.

57.    On or about February 24, 2022, Deville began to feel unwell during a work conference in Austin. He experienced symptoms commonly associated with COVID-19.

58.    On March 1, 2022, Mr. Deville received confirmation that he had tested positive for COVID-19, requiring him to adhere to quarantine protocols to prevent the spread of the virus.

59.    On March 8, 2022, the Board President, Cohran, requested to meet with Deville for a CEO evaluation. Deville explained that he tested positive for COVID-19 for the second time in five days.

60.    Despite Deville's explanation of his positive COVID-19 status and the need to continue

---

1 *https://www.theadvocate.com/baton_rouge/news/baton-rouge-bus-system-says-fired-employee-wasnt-drug-user/article_f05bf268-f4c4-11ed-b887-5f4cd06dcbe1.html.*

quarantine, the Board President contacted him the following day, insisting that he attend a meeting for a CEO evaluation.

61.  Deville communicated that he was still experiencing fatigue, which could hinder his ability to fully engage in work-related activities.

62.  Over the next three weeks, the Board President persistently made work demands on Mr. Deville, despite his ongoing recovery and the residual effects of the COVID-19 infection.

63.  On or about April 7, 2022, the Board President requested that Deville attend a meeting the following day, where he was presented with an ultimatum to resign or face termination.

64.  Cohran made negative complaints about Deville's age and urged Deville to retire.

65.  Cohran made comments that Deville did not have the needed competency, claiming that Deville's age was a detriment and compared it to his (Cohran's) own 78-year-old mother.

66.  Cohran repeatedly suggested that Deville resign and save his legacy and himself from embarrassment.

67.  Demands were made to provide the Board with five years' worth of archived contract documents to search for potential policy violations by Deville.

68.  CATS Procurement staff pleaded with Deville that it would be impossible for several reasons to provide the requested documents on the schedule the Board demanded.

69.  Deville invited the Board member to meet with him and the Procurement staff to help provide understanding of the burden created by the request to retrieve the remotely archived documents.

70.  Nevertheless, the Board President Cohran continued to publicly harangue and deride Deville as unresponsive to Board requests.

71.  The Board President Cohran directed Deville to include an item on the public meeting notice that affirmed he regarded and/or perceived that Deville was disabled.

72.  The public posting required by Cohran read: To discuss the "character, professional competence, or physical or mental health of CATS CEO."

73.  At no time in the past had such language been used by the CATS Board in reference to evaluations of the CEO.

74.  Historical notices of CEO evaluations simply stated, "Evaluation of CEO Performance."

75.  During an Executive Session of the March 15, 2022, meeting, the CATS Board interrogated Deville about why he did not terminate the Comptroller for failing the drug test.

76.  Deville responded that terminating an employee covered by the ADA would be improper because, 1) a formal investigation into the matter was still underway; and 2) there were potential HIPPA and ADA violations involved.

77.  Despite that authority over all personnel matters were vested in Deville, the Board President Cohran directly instructed Deville to complete the investigation by March 21, 2022.

78.  Cohran instructed Deville to terminate the employee regardless of the outcome of the investigation.

79.  The investigation findings established that the employee had an illness covered by the ADA, and that the positive results of his drug test were caused by his regularly prescribed medications.

80.  Deville did not terminate the employee as demanded by the Board President.

81.  On April 11, 2022, a special CATS Board Meeting was called with the following two agenda action items: 1) "Consideration of Termination of CEO Contract" and 2) "Appointment of Interim CEO".

82.  A CATS Board Member asked for cause for the proposed termination of Deville's employment contract.

83.  No Board member was able to articulate a cause for terminating the contract.

84.  It was then pointed out in the Board meeting that termination of the CEO contract without cause would subject CATS to substantial damages.

85.  The Board then approved a motion to strip Deville of his CEO authority and assign him other duties through the end of his contract.

86.  The CATS Board then approved a resolution to appoint an Interim CEO.

87.  Despite the CATS Board voting to assign Deville other duties through the end of his contract, no other duties were ever assigned to Deville.

88.  By Saturday, four days after the meeting in which the CATS Board took the adverse action against him, Deville became seriously ill and was hospitalized.

89.  In April 2022, Deville was harassed publicly by the Board President with false allegations that in January employees had gone without health insurance coverage due to non-payment by CATS.

90.  The allegations were false; there had been no lapse in coverage.  CATS changed health insurance companies.

91.  The Board continued with more false allegations in developing its pretext to terminate Deville's employment.

92. The Board falsely claimed Deville exceeded contracting authority, allowed insurance to lapse, and said funds were missing.

93. At the April 15, 2022, Board meeting the Defendant stripped Deville of his CEO duties, adversely affecting his health, and compelling him to seek protection under the Family Medical Leave Act (FMLA).

94. On or about June 29, 2022, Defendant voted to terminate Deville's employment.

95. Deville was not provided any notice prior to the vote to terminate his contract, or any notice afterwards.

96. At the instruction of Deville's physician, Deville requested a leave of absence to be treated and allow his health to improve.

97. On August 2, 2022, Deville contacted the Human Resources department and formally requested a reasonable accommodation under the Americans with Disabilities Act.

98. Deville never received a response from Defendant regarding his request for a reasonable accommodation.

99. Deville never received an acknowledgement from Defendant regarding his request for a reasonable accommodation.

100. On November 7, 2022, CATS, for the first time, notified Deville of the alleged reasons for removing him.

101. All such reasons were false and pretextual.

102. The notice claimed Deville was fired for actions dating back to December 2021.

103. The claimed allegations had not previously been brought to Deville's attention.

104.    In and around December 2022, Defendant announced an additional reason for terminating Deville, citing a quote from a matter he was never questioned about.

105.    None of the claimed reasons had been brought to Deville's attention prior to November and December 2022. None of these pretextual reasons were articulated when Deville was stripped of his duties in April 2022.

106.    On February 14, 2023, Defendant conducted a disciplinary hearing for Deville to respond to the false allegations.

107.    Deville provided factual explanation to each of the allegations and requested that he not be terminated.

108.    None of these pretextual reasons were articulated when Deville was stripped of his duties.

109.    On February 28, 2023, Deville was notified by Defendant's attorney that he was terminated effective February 14, 2023.

## COUNT 1
### Retaliation in Violation of the ADA

110.    Paragraphs 1 -97 are incorporated herein as if set forth at length.

111.    In February 2022, Deville became aware that CAT'S Human Resources department conducted a drug test on the Comptroller. He tested positive.

112.    The CEO was a non-safety sensitive employee with a protected disability under the Americans with Disabilities Act (ADA).

113.    It was improper to require a drug test of the Comptroller pursuant to law as he was not a safety-sensitive employee.

114.    CAT's Board demanded that Deville's fire the Comptroller following the leaking of the positive drug test to the media.

13

115.    Deville was aware and believed sincerely and in good faith that it would be a violation of the CEO's rights under the ADA to fire the Comptroller when the positive drug test was a result of medication necessary to manage a disabling medical condition.

116.    Despite attempting to explain the impact of the ADA, the Board was still insistent that Deville fire the Comptroller.

117.    Deville consulted a mass transit legal expert to seek guidance on the appropriate course of action.

118.    The legal expert advised Deville to provide the Comptroller with due process and investigate the matter thoroughly, considering the protections provided to the Comptroller under the ADA.

119.    Additionally, the legal expert highlighted potential violations of federal regulations concerning the testing of non-safety sensitive employees, emphasizing the importance of upholding the rights of the employees in such circumstances.

120.    Based on the legal advice he received, Deville concluded the Comptroller was protected by the ADA and took no disciplinary action against the Comptroller.

121.    Deville adhered to legal advice and stayed true to the requirement to protect the rights of the Comptroller under the ADA.

122.    Defendant consistently challenged Deville's decision and complained about his refusal to terminate the Comptroller based on the positive drug test.

123.    Deville repeatedly reiterated to Defendant that the Comptroller's situation fell within the purview of the ADA, and any action taken against the Comptroller would constitute a

violation of the ADA, emphasizing the need to handle the matter in compliance with federal disability laws.

124.    In response to Deville refusing to violate the ADA, on February 23, 2022, Defendant convened a special Board meeting to review the "drug and alcohol" policy, specifically citing Deville's failure to adhere to Board policies and directives regarding his not terminating the Comptroller.

125.    A second Board meeting was held on March 15, 2022.

126.    During the meeting, the Defendant accused the Comptroller of being an illegal drug user and questioned Deville about why he had not terminated the Comptroller.

127.    Deville again explained that any action taken against the Comptroller would violate the ADA.

128.    Defendant threatened Deville with termination in response to his opposition to illegal discrimination against the Comptroller who was protected under the Americans with Disabilities Act (ADA).

129.    Following Deville's refusal to violate the ADA, he was removed as CEO.

130.    The Board passed a resolution stating that Deville would be assigned other duties after his removal.

131.    Deville was never provided such other duties.

132.    Deville was engaged in protected activity in analyzing the Comptroller's circumstances pursuant to the ADA and not firing the Comptroller in violation of the ADA.

133.    Deville was opposing, based on a reasonable good faith belief, firing the Comptroller in violation of the ADA.

134.    Defendants knew that Deville was opposing violations of the ADA and/or that he was engaged in protected activity because he repeatedly articulated to them as set forth herein that he could not fire the Comptroller in violation of the ADA.

135.    Adverse actions were then taken against Deville following his refusal to violate the ADA.

136.    Deville was stripped of his duties as CEO.

137.    Deville was never given other duties as the Board voted to do after stripping him of his CEO duties.

138.    Deville was terminated from his employment with CATS.

139.    Defendant's actions were all in violation of the ADA.

**COUNT 2**
**ADA/ADAAA Disability Discrimination**

140.    Paragraphs 1 – 127 are incorporated herein as if set forth at length.

141.    Despite Deville's exclusive authority over personnel matters, the Board President continuously pressured Deville to terminate an ADA-protected employee.

142.     At the April 15, 2022, Board meeting the Defendant stripped Deville of his CEO duties.

143.    Deville subsequently suffered adverse health affects.

144.    Deville sought out medical care.

145.    Deville's physician requested that he take a leave because of the adverse health effects he was experiencing.

146.    Deville requested leave under the Family Medical Leave Act (FMLA) and the leave was approved.

147.    On August 2, 2022, Deville contacted the Human Resources department and formally requested a reasonable accommodation under the Americans with Disabilities Act.

16

148. Deville never received a response from Defendant regarding his request for a reasonable accommodation.

149. Deville was not invited to engage in the interactive process regarding his request for an ADA reasonable accommodation.

150. Deville was nearing the time for release from his treating physician in late August 2023.

151. The terms of the release would have allowed Deville, a disabled person, to continue performing his job with a reasonable accommodation.

152. Deville was also regarded as having a disability by the Board President as evidenced by his insistence on the negative public notice Board Meeting posting to evaluate the "physical and mental health of the CEO".

153. Defendants knew of Deville's disability and/or that he was regarded as having a disability because he was on leave under the Family Medical Leave Act for a medical condition.

154. Defendants also knew of Deville's disability when he specifically requested a reasonable accommodation pursuant to the ADA.

155. Defendants did not provide Deville with an accommodation following his request for an accommodation.

156. Defendants at no time sought to engage Deville in the interactive process following his request for an accommodation.

157. The references and adverse actions taken against Deville, up to and including the initial Board meeting at which the Defendant sought Deville's termination and the final action of termination in February 2023, resulted from illegal discrimination based on disability.

158. The unlawful employment practices complained of above were intentional.

17

159.  The unlawful employment practices complained of above were done with malice and/or with reckless indifference to Deville's federally protected rights.

**COUNT 3**
**Age Discrimination**

160.  Paragraphs 1 – 97 are incorporated herein as if set forth at length.

161.  Defendant discriminated against Deville, specifically targeting his age of 75.

162.  The Defendant, through its President Cohran, made comments when discussing work with Deville referencing Deville's age.

163.  Cohran referred to Deville as "elder" when discussing work with him.

164.  Cohran went on to discuss Deville's eligibility for retirement.

165.  Cohran asked Deville during the discussion relative to Deville's age, "When are you going to retire?"

166.   Defendant Cohran compared Deville's age and abilities with that of his (Cohran's) own mother.

167.  On March 14, 2022, the Defendant instructed Deville to add an agenda item for the Board meeting on the following day titled "discussion of the character, professional competence, or physical or mental health of CATS CEO [William Deville]."

168.  Public notices of performance evaluation meetings for prior CEOs simply stated, "Evaluation of CEO performance."

169.  Defendant insisted the agenda item be posted for the public with this specific negative language, creating negative connotations suggesting and inferring that Deville was disabled due to his age based on his perceptions of mental and physical ability.

18

170.    The public notice was accessible to all members of the community, including CATS employees.

171.    The negative public posting that Defendant insisted on further exposed Deville to discrimination and stigmatization.

172.    The Defendant's decision to publicly announce an evaluation of Deville's perceived mental and physical disability and age-related issues was a violation of the ADEA and was the reason for terminating Deville's employment.

173.    The Defendant drew a link between the CEO's age and his performance, fostering age discrimination.

174.    Deville was 75 years old at the time the adverse actions against him began.

175.    Defendants' discharged Deville because of his age, as evidenced in the foregoing paragraphs, in violation of the ADEA.

176.    The Defendants' comments regarding Deville being an "elder" and like his mother age-wise, and Defendants' other actions led to Deville's termination because of his age.

177.    The references and adverse actions taken against Deville, up to and including the initial Board meeting at which the Defendant sought Deville's termination and the final action of termination in February 2023, resulted from illegal discrimination based on Deville's age of 75 years.

178.    The unlawful employment practices complained of above were intentional.

The unlawful employment practices complained of above were done with malice and/or with reckless indifference to Deville's federally protected rights.

## COUNT 4
## Disability Discrimination Under Louisiana Law

179.    Paragraphs 129 -148 are incorporated herein as if set forth at length.

180.    The actions of the Defendant as set forth in Count 2 which has been incorporated herein by reference violated the Louisiana law prohibiting discrimination based on disability.

## COUNT 5
## Age Discrimination Under Louisiana Law

181.    Paragraphs 149 -167 are incorporated herein as if set forth at length.

182.    The actions of the Defendant as set forth in Count 3 which has been incorporated herein by reference violated the Louisiana law prohibiting discrimination based on disability.

## COUNT 6
## Breach of Contract

183.    Paragraphs 1 - 167 are incorporated herein as if set forth at length.

184.    Pursuant to Louisiana law a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.

185.    An obligor is liable for damages caused by his failure to perform a conventional obligation.

186.    On September 20, 2016, Deville entered into an employment contract with Defendants.

187.    The employment contract provides that Defendant "shall not terminate Deville's employment except for cause".

188.    The employment contract further provides that Deville's performance would be evaluated by the Board annually.

189.    The employment contract also provides that Deville would receive deferred compensation of 15,000.00 annually.

190. The Contract also provides that Deville would be entitled to 30 days' notice prior to terminating his contract.

191. When the Board acting through President Cohran attempted to terminate Deville's contract during its April 11, 2022, Board meeting, a Board member pointed out that the Board had no cause to terminate Deville's contract.

192. As a result, the Board instead breached the employment contract by taking Deville's position as CEO from him and appointing an Interim CEO.

193. The Defendant breached to contract when it did not pay Deville $15,000.00 deferred compensation annually during the contract period.

194. The Defendant breached its contract with Deville when it failed to provide annual performance reviews as required by the contract.

195. Defendant breached the contract when it failed to give him thirty days' notice prior to attempting to terminate his contract.

196. Defendant breached the contract when it terminated Deville's contract without cause, because as the Board member pointed out in the April 2022 meeting, they had no cause.

197. Defendant breached its contract with Deville through its failure to perform/nonperformance of its obligations as noted above.

Deville demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Deville respectfully prays this Court for relief as follows:

A. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 that the acts and omissions of Defendant deprived Deville of his rights guaranteed by the laws of the United States;

B. Grant a permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys, and assigns and other representatives, and all those persons acting in concert with them and a their discretion, from engaging in any employment policy or practice which discriminates against the Deville, or is retaliatory against the Deville because of the Deville exercising rights afforded to him under federal and state laws; and direct defendant to comply with its equal employment obligations.

C. Order the Defendant to make whole the Deville by providing appropriate backpay, front pay, compensatory damages, punitive damages and reimbursement for lost pension, social security and other benefits in an amount to be shown at trial, but not less than $800,000.00;

D. Order that Defendant pay reasonable attorney's fees;

E. Retain jurisdiction over this action to assure compliance with the orders of the Court;

F. That Deville recover prejudgment and post judgment interest to the maximum extent permitted by law; and

G. That the Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

MUHAMMAD LAW FIRM

/s/ Tammy Barrow
Tammy Barrow
LA Bar No. 24649
Texas Bar No. 240044067
1700 Pacific Avenue
Suite 3740
Dallas, Texas 75201
(214) 432-6285
TMBarrow@muhammadlawfirm.com

22

/s/ Michael K. Muhammad
Michael K. Muhammad
Pro Hac Vice Application Forth Coming
Texas Bar No. 00787157
1700 Pacific Avenue
Suite 3740
Dallas, Texas 75201
(214) 432-6285
Michael@muhammadlawfirm.com

ATTORNEYS FOR WILLIAM DEVILLE

Dated: 11/14/2023

# EXHIBIT A

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New Orleans Field Office
500 Poydras Street, Suite809
New Orleans, LA 70130
(504) 635-2531
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/17/2023

**To:** Mr. William J. Deville Jr.
2001 S. Dupre Street
New Orleans, LA 70125
Charge No: 461-2023-00237

EEOC Representative and email:     KORY FASCIO
Investigator
kory.fascio@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 461-2023-00237.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
08/17/2023

Rayford O. Irvin
District Director

**Cc:**
Alex C Hains
Breazeale, Sachse & Wilson, LLP
PO BOX 3197 301 MAIN STREET, 23RD FLOOR
Baton Rouge, LA 70821

Tonia Booker
2250 FLORIDA ST
Baton Rouge, LA 70802

Murphy J Foster, III
Breazeale, Sachse & Wilson, LLP
PO BOX 3197 301 MAIN STREET, 23RD FLOOR
Baton Rouge, LA 70821

Michael K Muhammad
Muhammad Law Firm
1700 Pacific Avenue  Suite 3740
Dallas, TX 75201


Please retain this notice for your records.